Ms. Morland, we note that you, too, have been appointed under the Criminal Justice Act to represent Mr. Kaeding. And we certainly appreciate your accepting the appointment. Thank you, Your Honor. May it please the Court, my name is Karen Morland, and it is my privilege to represent Mr. Kaeding in this matter. We've raised a number of issues on appeal, a number of reasons that this case should be reversed and remanded to the district court. But taking just a step backwards, I think fundamentally what this case is about at its heart is the right to a fair trial and what that means. And this is also, in that respect, a case in which the total is more than the sum of the parts. So some of these issues that we raised in the briefing certainly are standalone issues that, on their own, could warrant the relief we're asking for, namely a new trial. But what becomes particularly troubling and important about this case is the way in which those issues impact and magnify one another. And so, for example, one of the primary issues in this case is the right to counsel. Mr. Kaeding waived his right to counsel in this case and proceeded largely unrepresented with the services of standby counsel. The right to counsel is fundamental, and it is important. And so a defendant, before waiving that right, must be made aware of the dangers and disadvantages. And although there is no script or no formula, what the Supreme Court has told us is that there should be a practical approach that advises the defendant of the purposes and of the assistance that a lawyer could provide at various stages of the proceedings. The advisors in this case- Counsel, what, if anything, was deficient in the interchange between the judge and Mr. Kaeding in advising him about the potential pitfalls and consequences of choosing to represent himself? Thank you, Your Honor. What was primarily lacking was specific information regarding the practical difficulties that Mr. Kaeding would face, especially because he was, at the time, detained. Not only detained, but detained not in pretrial facilities, but actually in prison facilities due to his medical needs, which the pretrial facility could not handle. And so what Mr. Kaeding experienced, but without having been advised about it, was significant difficulties with discovery. It was misplaced during his many facility moves. He was entirely unable to access electronic discovery and had difficulty accessing items which might have been in his possession had he been out of custody. He was not specifically advised about the need to prepare witnesses to obtain any experts that he would need on his own behalf to interview witnesses or how difficult that would be for him given his detention. Would this be kind of an additional overlay on any kind of FARETA hearing? Is that what you're asking for here? I think it plays into what constitutes a sufficient FARETA inquiry. And there were, in fact, two FARETA hearings, essentially, in this case. There was one fairly early in the proceeding when Mr. Kaeding first expressed his desire to represent himself. The case at that time was still in pretrial motions. Those were pending at the time and was with the magistrate judge. And then as trial approached, there was a second FARETA hearing before the district court judge. And I think that's where we run into the bigger issue, is that knowing that the case is on track for trial, and that's where this is headed. That at that point, the purposes and the assistance that a lawyer can provide in preparing for and conducting a trial become exceedingly important to the voluntariness and the knowing character of the waiver of counsel. And I think that's where it's not about an additional requirement. It's about what does FARETA practically require so that a defendant truly understands what he's giving up by representing himself and the dangers and the disadvantages that he's going to face with that decision. Mr. Kaeding complained frequently about the problems that he was having, including those I've already mentioned, as well as access to a computer and unavailability of privileged phone calls. That would have been a perfect opportunity for the court to address those issues, to make sure that he understood that those things were not going to change. And that if he persisted in representing himself, that he would have those difficulties. Counsel, how many of those difficulties occurred after the first FARETA hearing and before the second FARETA hearing? Thank you, Your Honor. I would say most of them. So why didn't that really put him on notice of the difficulties that he was having and further emphasize the importance of counsel? Thank you, Your Honor. Part of the problem was the number of facility moves that Mr. Kaeding had. And he kept thinking that things would be better at a different facility. And he was aware, and the court was very aware, that these things were happening. There were a number of reasons for the various facility moves. None of them were surprises to anyone. And so he believed that, oh, well, once I move to this new facility, then I will be treated like a pretrial detainee. Then I'm going to be able to make phone calls. I'm going to have access to my discovery. And it simply did not play out that way. And so he went to trial unprepared because he didn't know how much it would require and how much time it would take him. As I understand it, one of the limitations he was concerned about was the inability to do research in some of these places. Didn't the district judge expressly say that one of the standby counsel could conduct that research for him? The district court did say that, Your Honor, yes. Does that help? Does that help support his decision? Because one concern I have here in the argument is I'm trying to figure out what the district judge could do that didn't infringe on his right to represent himself. Because I could see this going the other way if, in fact, he had counsel forced upon him. Because he seemed very clear here that this is what he wanted to do. So I wondered about adding in the research aspect from a lawyer. What is that doing? Thank you, Your Honor. I do think it mitigates the problems that he was having. And I do think it was a way of the district court up front trying to mitigate those dangers to the extent that it could with standby counsel. I think where the problem comes in is that certainly he did complain about access to do his own research. But it was more than that. It was about reviewing his own discovery. It was about having access to a computer so that he could organize his thoughts and to rework things in ways that we're all accustomed to in a digital age. It was about having access to witnesses and being able to interview them and to talk to them and to have privileged phone calls. And he simply did not know that he would lack that access. He expected it was going to come. He expected it would come sufficiently in time that he could prepare for trial. And it didn't. And when it didn't and he didn't know about it, the result was a trial that was unfair. And with that, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. Ms. Kirkpatrick. Thank you. May it please the Court, my name is Lisa Kirkpatrick and I represent the United States in this appeal. I'd like to do what the defendant's counsel did in this case and take a step back because I think it does give important context to all the issues raised in this appeal. The defendant was convicted of engaging in a really brazen fraud scheme to defraud the CARES Act programs, the Payroll Protection Act program, as well as the Economic Injury Disaster Loan program by attempting to steal as much as $2.1 million. And that fraud scheme, at the heart of it, was the defendant's facility for lying, for creating documents to support those lies and submitting those claims over and over again. Really brazen. And that facility for not telling the truth really was borne out throughout the record in this case as well. And that really is important to understanding the issues that the defendant has raised here. The district court made several findings. This is a fairly lengthy record. But at several points in the record, just by way of example, the district court discussed or made explicit the defendant's credibility deficits with the district court. During the Frey-Laffler hearing at page 45, the district court said, one of the things that I'm quoting here that has concerned me from the start of this case and our trial preparations is Mr. Kading's credibility. And the court noted that the defendant often says things that turn out not to be true. At volume one of the trial transcript at page seven, in terminating CART services for the defendant, the district court found that the defendant's claims of hearing loss were greatly exaggerated, perhaps even fabricated. At page 43 of volume two of the transcript, when the defendant was complaining about his ability to get medication, the district court stated, I don't believe you. And then at page 44, the district court made that same finding. At page 805 in volume seven, in addressing the defendant's claims that he wasn't able to communicate with standby counsel, the district court stated, and I quote, I have a hard time trusting what you tell me. At page 926 of volume eight, the district court found that it wasn't credible that the defendant didn't have a chance to find another attorney. And I say those things not to paint the defendant in a bad light, but because many of the issues, frankly, all the issues in this case are decided, or can be decided, by the fact that the defendant has proven himself time and again to be a liar. And that's what those claims are based on as we continue here with regard to the defendant's claim that he didn't have a fair trial. And I understand your point, but do we have district court findings that the issues that were raised here today were raised and were not credible? In other words, we can't make a finding that the claim that he did not have access to discovery in the way he would like is not a credible claim. But are you suggesting that there are findings by the district court that would support the conclusion that those assertions were not true? Portions of those assertions, Your Honor, yes. Where the defendant is complaining about his access to discovery, and the district court says, things you tell me turn out not to be true often. It's not that the district court found everything you're saying is a lie, but it colors the district court's understanding of what the defendant is telling him. So when the defendant said he couldn't communicate with standby counsel, the district court specifically found, I don't find that to be credible. And what I'm hearing today, anyway, is he just didn't understand. He didn't understand how difficult it would be. And I guess in putting that issue in the bucket of your argument, it's like, well, we can't really make a judgment call of whether he did or he didn't. But are there findings by the district court in the theme of your argument that would support your position regarding his understanding of the consequences of going pro se? In part, Your Honor, things such as the district court indicating, you keep coming to me with issues, but you're not being specific about anything. That has continued. Again, you say things, they turn out not to be true. But what the record reflects, without regard to the district court's credibility findings, is that there's no question that the defendant understood the perils of self-representation. And I want to be clear here, a waiver of self-representation, excuse me, a waiver of counsel is valid if the defendant was informed by the court of the perils of self-representation, or the record reflects that he understood those dangers himself. And so that's stated, that test is in the disjunctive. And we certainly meet the first part of the test without regard to the defendant's credibility in this case. The district court and the magistrate court both warned the defendant about the dangers. The district, excuse me, the magistrate court said this is a terrible idea. The district court twice said this is a bad idea. And both the magistrate judge and the district judge outlined the specific tasks that the defendant would be required to perform were he to represent himself. He would be responsible for legal research, despite that the magistrate judge did order standby counsel to assist. You're going to be responsible for knowing and complying with the rules of evidence, as well as the rules of criminal procedure, to the same extent that a licensed attorney would be. You're going to have to do your own writing. You're going to have to form your own strategy. The magistrate judge outlined all those tasks and informed the defendant that it was a terrible idea. And on those facts, as well as the reiteration of what a terrible idea it was by the district judge at the Ferretti hearing on March 8, there's no question that the defendant was informed of the perils of self-representation. And that's sufficient on its own. The second part, or that the defendant understood the perils of self-representation, is also borne out by the record here. The defendant had been in custody for two years before he moved to represent himself. So at the time he made that motion, he already knew what restrictions he had by being in custody. He may have hoped that they'd improved, but he knew what he was facing. He had eyes wide open, and he did it anyway. And then between the time he was allowed to go pro se and trial, we still have one and a half years, or at least a year, I'm sorry. I'm spacing the time a little bit. But he knew the difficulty he was facing. And again, this is where the district court's findings concerning lack of credibility come into play as well. The defendant- Counsel, another one of the issues on appeal is the denial of the motion for change of custody. How much authority did the district court have with regard to the placement, the place of custody? The district court was exceedingly accommodating of the defendant's particular needs in this case. There were efforts made to place him in community placement. Those efforts failed. And this is a defendant who had been found by two magistrate judges to be a flight risk based on his flight to Columbia. There really was no option here where this defendant had proven himself to be a prevaricator and someone willing to attempt to forestall justice, both through his continuances as well as through his flight to Columbia following the search warrant in this case. Why did the community placement fail? Was that because there wasn't something available, or was it something on the part of Mr. Kading? Your Honor, Ms. Moreland can probably speak to that better than I could. I know at one point it was a funding situation. I don't know beyond that what failed. They had engaged the social worker to attempt to find community placement, and it just didn't work out. Counsel, with regard to the flight to Columbia, I believe the government stated that during the search, they confiscated his passport, and I was just curious how he got to Columbia without a passport, if we know from the record. I believe, Your Honor, that the record reflects that that was, in fact, an incorrect belief on the part of the government at the time that the passport had been seized. It had not been seized, and I believe that is how the defendant got to Columbia. And to be clear, he wasn't under any travel restrictions at the time he left. It's his conduct that ensued following that flight to Columbia, not returning. That is somewhat significant in that, had his passport been seized, it would have certainly indicated to him that travel was not permitted, and it would be relevant to the obstruction of justice enhancement. Certainly would, Your Honor. And this is a case, if I may finish my thought, this is a case where we have three judges who all found that the defendant's flight to Columbia was willful. We have two magistrate judges who made that finding, as well as the district court finding. And the district court's findings at the sentencing hearing are robust and wholly support. And for those reasons, Your Honor, we ask that the defendant's conviction and sentence be affirmed. Thank you. Thank you. I think I can, in fact, answer some of the questions that came up. With respects to the flight to Columbia, counsel is correct. During the search warrant, it is my understanding that officers located an expired passport, which was not seized, it was returned to him. He did have a valid passport, which must have been in a different location or was not located during the search. He did talk to his lawyer before traveling to Columbia and confirmed that he was not under arrest or indictment at that time. And in fact, had no travel restrictions, was cleared to travel to Columbia. With respects to the community placement, I can tell the court there were two potential community placements. The first one did fall apart for lack of funding. The second one, he was accepted to, but before the court made an order on the change for custody, Mr. Kading asserted his right to represent himself in the way of counsel, which then changed the government's calculation of the risk of flight and the risk of danger to the community. And so the government's position on release to community placement changed at that point. There was a community placement available. It had accepted Mr. Kading and the district court denied that motion largely because with him now acting as his own attorney and the government no longer supporting that change of custody, the court found that the factors weighed in favor of detention and denied his motion for change of custody. Would that have been a release from detention? This was not a secure community living situation, is that correct? That's correct, Your Honor. It was more in the nature of an assisted living or a group home type of a facility, not a secure facility in any way or shape or form. And so I think in a lot of ways, what this comes down to big picture is that Mr. Kading was left in a position of having to choose between his right to counsel and his right to represent himself. And that decision was motivated in part by the fact that he had tried to get rid of appointed counsel and have appointed counsel replaced. And that attempt was denied by the court. And it left him in the position of having to choose on the one hand between counsel he did not like or trust, and on the other hand, the risk of his own lack of experience and knowledge. And the problem here is that he didn't adequately understand the breadth and the depth of his lack of knowledge and his lack of experience. And so the Supreme Court warned us way back in Gideon versus Wainwright that the danger an unrepresented defendant faces is the danger of conviction because he does not know how to establish his innocence. And that is in fact what happened in this case. Mr. Kading was not able to put together a defense. He was not able to adequately represent himself. And that is the reason that he stands convicted. We're asking the court to reverse that conviction and remand for a new trial. Thank you. Thank you.